b

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

| | |
|---|---|
| **JORDAN SANTOYO,** Plaintiff | **CIVIL ACTION 1:19-CV-01539** |
| **VERSUS** | **JUDGE DRELL** |
| **VILLAGE OF HESSMER, ET AL.,** Defendants | **MAGISTRATE JUDGE PEREZ-MONTES** |

## REPORT AND RECOMMENDATION

Before the Court is a Motion to Dismiss filed by Defendants. ECF No. 9. Because Santoyo agrees to voluntarily dismiss certain claims, Defendants' Motion to Dismiss (ECF No. 9) should be GRANTED IN PART as to Santoyo's defamation and "federal whistleblower and anti-retaliation statute" claims. Defendants' Motion to Dismiss (ECF No. 9) should be DENIED IN PART as to Santoyo's: Louisiana Whistleblower Statute (La. R.S. 23:967) claim; due process violation claim pursuant to La. R.S. 40:2531; and § 1983 First Amendment retaliation claim.

## I.   Background

Plaintiff Jordan Santoyo ("Santoyo") filed a petition pursuant to 28 U.S.C. § 1983 in a Louisiana state court. ECF No. 1-2 at 2. The named Defendants are the Village of Hessmer ("Hessmer"), Travis Franks ("Franks") (in his individual and official capacity as Mayor of Hessmer), Keith Armand ("Armand") (in his individual and official capacity as a Council Member for Hessmer), Joshua Roy ("Roy") (in his

individual and official capacity as a Council Member for Hessmer), and Justin Gaspard ("Gaspard") (in his individual and official capacity as a Council Member for Hessmer).  Santoyo alleges that, after he was given an assignment investigating potential financial improprieties in Hessmer, he was wrongfully terminated by Hessmer in violation of the Louisiana Whistleblower Statute, La. R.S. 23:967, and the Louisiana Code of Governmental Ethics, La. R.S. 40:1169.  He also claims that he was defamed when Defendants interfered with his employment with the Village of Cottonport, resulting in his non-employment for or termination from that position.

Defendants answered and made a reconventional demand against Santoyo for attorney's fees and costs pursuant to La. R.S. 23:967(D).  ECF No. 1-2 at 17. Defendants also included a Peremptory Exception of No Cause of Action under the whistleblower statute, La. R.S. 23:967, the Governmental Ethics whistleblower statute, La. R.S. 42:1169, or for defamation.  ECF No. 1-2 at 17.    Plaintiff answered the reconventional demand.  ECF No. 1-2 at 36.

The state court sustained the Exception of No Cause of Action, dismissed all of Santoyo's claims against Defendants, and granted Santoyo leave to file an amended petition.  ECF No. 1-2 at 121.

Santoyo filed a First Amended and Supplemental Petition for Damages, asserting claims for: (1) violation of La. R.S. 40:2531 (minimum standards of procedural due process applicable to the disciplinary investigation of a police officer and penalties); (2) violation of La. R.S. 23:967 (the Louisiana Whistleblower

2

Statute); (3) retaliation under La. R.S. 23:967; and (4) First Amendment retaliation. Santoyo expressly "deleted" his defamation claim. ECF No. 1-2 at 125; No. 1-2 at 124. Defendants removed, contending Santoyo's claims arise under 28 U.S.C. § 1983. ECF No. 1.

Defendants then filed a Motion to Dismiss for failure to state a claim, pursuant to Fed. R. Civ. P 12(b)(6). ECF Nos. 9, 12. Santoyo concedes that dismissal without prejudice is appropriate for his defamation, federal whistleblower, and federal anti-retaliation claims, and opposes dismissal of the remaining claims. ECF No. 11.

## II.    Law and Analysis

### A.    Standards Governing the Motion to Dismiss Pursuant to Fed. R. C. P. 12(b)(6).

A court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6). "[A] complaint will survive dismissal for failure to state a claim if it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal citation and quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (U.S. 2009). The court must view all well-pleaded facts in the light most favorable to the plaintiff. *See Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016).

3

B.    <u>The allegations in Santoyo's complaints.</u>

Santoyo alleges in his First Supplemental and Amending Complaint that he was a POST-certified police officer employed by Hessmer in 2017, and that his commanding officer and supervisor, Chief of Police Kenneth Smith, had Santoyo investigate certain employees of Hessmer for malfeasance in office.  He was also tasked to investigate the public finances of Hessmer for malfeasance.  Santoyo informed Chief Smith that: (1) Mayor Franks had used Hessmer police officers at private functions, with Hessmer paying the costs; and (2) at least one council member had used Hessmer employees to perform work on his private residence, at Hessmer's expense.

Santoyo also alleges that, in July 2018, while he was an officer for Hessmer, he applied to be a part-time officer for the Village of Cottonport ("Cottonport"). Chief Smith was aware of that application.

On July 24, 2018, Hessmer issued a letter to Santoyo informing him that his "professional competence" was the subject of an Emergency Special Meeting on July 26, 2018.  No details were provided.  Hessmer than notified Chief Smith that Santoyo had undertaken personal matters while on the clock with Hessmer, but never sought Chief Smith's recommendation.[1]  Santoyo's employment with Hessmer was terminated at the Special Meeting on July 26, 2018.  Santoyo alleges he was terminated in retaliation for his investigation into potential abuses of the public finances.

---

[1] Santoyo contends Chief Smith was aware of the interview.  It is not clear whether he had permission to interview during his work hours with the Hessmer Police Department, or whether he was actually "off the clock" when he did so.

4

In his amended complaint, Santoyo alleges Defendants violated La. R.S. 23:967, the Louisiana Whistleblower Statute because he alleged a violation of state law, reported it in good faith to his superiors, and his employment was terminated. Santoyo also alleges retaliation pursuant to "all state and federal anti-retaliation statutes" and defamation, including violation of his First Amendment right to free speech. Santoyo contends that, as a result, he has not been able to obtain new employment with a police department in Avoyelles Parish or the surrounding parishes.

Santoyo also alleges he was deprived of procedural and substantive due process. Santoyo contends that Hessmer's violations of his right to procedural due process rendered his termination an absolute nullity pursuant to La. R.S. 40:2531.

### C.   Defendants' Motion to Dismiss should be granted in part and denied in part.

Defendants argue that Santoyo's has not stated claims: (1) for First Amendment retaliation; (2) under the Louisiana Whistleblower Statute, La. R.S. 23:967; (3) for violations of due process under La. R.S. 40:2531; (4) for defamation; or (5) under federal anti-retaliation laws.

### 1.   Defendants' did not show that Santoyo's statements to the Mayor and City Council were made within the ordinary course of his official duties.

Defendants argue that Santoyo's First Amendment retaliation claim should be dismissed because only speech as a private citizen is protected speech. Defendants contend that, when Santoyo reported the results of his criminal

investigation to the Mayor and City Council members, he was speaking as a public employee, not as a private citizen.

Santoyo disclosed his findings of malfeasance in office by the Mayor and one member of the City Council to his supervisor, Chief Smith. Subsequently, Santoyo was given a letter stating there would be a meeting in two days to discuss the issue of his "professional competence." No further explanation was given. At that meeting, Santoyo was accused of having gone to an employment interview for a part-time job in Cottonport during his work hours with the Hessmer Police Department. Santoyo countered with his findings of malfeasance by the Mayor and one of the council members, to which the Mayor and three City Council members responded with votes to terminate Santoyo's employment.

"[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006). The First Amendment does not protect speech made in furtherance of a public employee's official duties, regardless of whether that speech addresses a matter of public concern. *See Howell v. Town of Ball*, 827 F.3d 515, 523 (5th Cir. 2016). It is not dispositive that an employee expresses his views internally, rather than publicly, or that the subject matter of the speech concerns the employment. *See Garcetti,* 547 U.S. at 419 (the controlling factor was that the plaintiff's expressions were made pursuant to his duties as a calendar deputy.). "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have

6

enjoyed as a private citizen.  It simply reflects the exercise of employer control over what the employer itself has commissioned or created."  *See id.* at 1960.

"To establish a § 1983 claim for employment retaliation related to speech, a plaintiff-employee must show: (1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action."[2]  *Moss v. Harris County Constable Precinct One*, 851 F.3d 413, 420–21 (5th Cir. 2017) (citing *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016)); *Goudeau v. East Baton Rouge Parish School Bd.*, 540 Fed. Appx. 429, 434 (5th Cir. 2013) (citing *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007), cert. den., 553 U.S. 1065 (2008)).

So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively.  *See Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006) (citing *Connick v. Myers,* 461 U.S. 138, 147 (1983)).  To determine whether a public employee spoke as a citizen on a matter of public concern, the courts focus on the role the speaker occupied when speaking and whether the

---

[2] Matters of public concern are those which can be fairly considered as relating to any matter of political, social, or other concern to the community.  Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of officials, in terms of content, clearly concerns matters of public import.  *See Anderson v. Valdez*, 845 F.3d 580, 599 (5th Cir. 2016); *see also Escamilla v. Elliott*, 816 Fed. Appx. 919, 927 (5th Cir. 2020).

Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required" to make out a prima facie retaliation case.  *See Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019) (citing *Swanson v. General Services Administration*, 110 F.3d 1180, 1188 (5th Cir. 1997), cert. den., 522 U.S. 948 (1997)).

speech was part of, or closely related to, his job duties. *See Petrie v. Salame*, 546 Fed. Appx. 466, 469 (5th Cir. 2013) (citing *Davis v. McKinney,* 518 F.3d 304, 312 (5th Cir. 2008) (when the deputy spoke off-duty and out of uniform to someone outside of his chain of command on a matter of school curriculum–retaining the DARE program–the deputy's speech was not related to his School Resource Office job duties and the content of his speech indicated that he spoke primarily as a citizen)).

When public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline. *See Anderson*, 845 F.3d at 599. But it is nondispositive that a public employee's speech concerns the subject matter of his employment. *See Anderson*, 845 F.3d at 474. The First Amendment protects some expressions related to the speaker's job. *Anderson*, 845 F.3d at 495 (citing *Lane v. Franks*, 573 U.S. 228, 239-40 (2014)). The critical question under *Garcetti* is whether the speech at issue is *ordinarily* within the scope of an employee's duties, not whether it merely concerns, or relates to, those duties. *See Anderson*, 845 F.3d at 595-96 (citing *Lane*, 573 U.S. at 240).

In *Callaghan v. Department of Fire*, the court found that a remark made by Plaintiff relating to Department policies, procedures, and his own employee evaluation by a supervisor, made in the course of private conversation with his employers, is protected speech under the First Amendment, for which he cannot be penalized. *See Callaghan v. Department of Fire,* 385 So. 2d 25, 27 (La. App. 4th

8

Cir. 1980) (citing *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 416-17 (1979)).

Defendants here argue that Santoyo's statements to them were in the nature of a report regarding his findings of malfeasance, and were made pursuant to his official duties. However, Santoyo's official report had already been made to Chief Smith, and Chief Smith had ordered Santoyo to gather evidence. There is no evidence to show that the Mayor and the City Council members were in Santoyo's "chain of command" or that Santoyo was reporting "up" his chain of command to them. Santoyo's statements to the Mayor and the council members at their "emergency meeting" were not made in Santoyo's workplace. There is no evidence– and it seems unlikely–that Santoyo had a job-imposed obligation to report the alleged wrongdoing by the Mayor and a member of the City Council to the Mayor and the City Council. Santoyo's statements appear to have been made in retaliation to their accusations as to Santoyo's misconduct. Rather than giving an official report to the Mayor and the City Council, Santoyo was arguing with them.

Therefore, accepting Santoyo's allegations as true for purposes of this Motion, it does not appear that Santoyo's statements to the Mayor and the City Council members were made within the ordinary course of his official duties, but rather were made as a "private citizen." *Contrast Moss v Harris County Constable Precinct One*, 851 F.3d 413, 421 (5th Cir. 2017) (a plaintiff spoke as an employee when, pursuant to his official duties as a deputy constable, he reported potential violations of environmental regulations to his superiors and the environment

enforcement division and, at the request of his supervisor, spoke to the newspaper about the potential violations).

Because Santoyo's statements were made as a private citizen, they are protected by the First Amendment. Defendants' Motion to Dismiss Santoyo's § 1983 First Amendment retaliation claim should be denied.

2. <u>Santoyo's statements to the Mayor and City Council were protected speech under the Louisiana Whistleblower Statute.</u>

Defendants contend Santoyo's Whistleblower Act claim should be dismissed because Santoyo has not alleged participation in a protected activity.

Louisiana's Whistleblower Act forbids retaliation when employee "in good faith, and after advising the employer of the violation ..., [d]iscloses or threatens to disclose a workplace act or practice that is in violation of state law." La. R.S. 23:967(A); *see Herster v. Bd. of Supervisors of Louisiana State University,* 72 F. Supp. 3d 627, 647 (M.D. La. 2014). The Act has five elements: "1) a workplace act or practice violates state law; 2) the employee informed his employer of the violation of state law; 3) the employee disclosed or threatened to disclose the violation; 4) the employee suffered an adverse employment action; and 5) the adverse employment action was suffered as a result of his whistleblowing activity." *Herster,* 72 F. Supp. 3d at 647.

An employer may not retaliate against its employees who advise an employer of violations of law. La. R.S. 23:967. *See Ray v. City of Bossier City*, 37,708 (La. App. 2 Cir. 10/24/03), 859 So.2d 264, 271, *writs den.,* 2003-3254, 2003-3214 (La. 2/13/04), 867 So.2d 697. The disclosure of misbehavior by public officials is a matter

10

of public interest and, therefore, deserves constitutional protection. *See Ray,* 859 So.2d at 273 (citing *Thomas v. Harris County,* 784 F.2d 648 (5th Cir. 1986)); s*ee also Harrison v. Parker,* 31,844 (La. App. 2d Cir. 5/5/99), 737 So.2d 160, 163, *writ den.,* 99–1597 (La. 9/17/99), 747 So.2d 565.   The reporting of misconduct within a police department is speech addressing a matter of public concern. *Ray*, 859 So. 2d at 273. Louisiana courts have found that to be the case even if the speech is not widely publicized. *See Ray*, 859 So. 2d at 273 (citing *Harrison,* 737 So.2d at 163).

Santoyo contends he was employed as a POST-certified police office by the Village of Hessmer and that Chief Smith was his supervisor.   Defendants have not disputed that allegation.

Defendants argue that Santoyo was reporting the allegations of wrongdoing to the Mayor and council members just prior to the vote to terminate him, and that Santoyo did not disclose or threaten to disclose the violations, nor did he participate in any protected activity after disclosing the alleged violations, to his employer. Defendants contend that Santoyo failed to establish a causal connection between a protected activity and his termination.

Defendants appear to argue that Santoyo did not engage in protected activity because he did not publicly disclose the alleged violations after he reported them to his supervisor, the Mayor and the City Council.   However, as Santoyo contends, Defendants fired him before he could disclose the violations to anyone else. According to Santoyo, he reported the results of his investigation to Chief Smith, was instructed to gather evidence, and was gathering evidence to prove the Mayor

and at least one member of the City Council had committed malfeasance in office when the "emergency meeting" was held and Santoyo was fired by the Mayor and the City Council.

In *Ray*, 859 So.2d at 273, the court found that a sheriff's department employee's reports to the sheriff of allegedly illegal or unethical conduct within the sheriff's office—namely, using inmates to do personal work for or on behalf of deputy sheriffs—dealt with matters of public importance for purposes of the employee's wrongful discharge claim.

Where a plaintiff-deputy spoke only to the sheriff about misconduct by other employees, the court found that was adequate speech to state a claim. *See Harrison*, 737 So. 2d at 162. The use of inmates for personal work raised public concerns regarding taxpayer funds, among other things. *See Harrison,* 737 So.2d at 163. The conduct could also have been malfeasance in office in violation of La. R.S. 14:134. *See Harrison,* 737 So.2d at 163.

Santoyo's report of the misconduct to Chief Smith, the Mayor, and  City Council members was adequate to constitute protected speech under La. R.S. 23:967.  Therefore, Defendants' Motion to Dismiss Santoyo's Whistleblower retaliation claim should be denied.

### 3. Santoyo has a cause of action under the Police Officer's Bill of Rights for due process violations.

Next, Defendants argue that Santoyo's claims for violation for violations of procedural due process under La. R.S. 40:2531 ("The Police Officer's Bill of Rights") should be dismissed because that statute does not create a private cause of action.

The Police Officer's Bill of Rights specifies that certain "minimum standards shall apply" to an internal, departmental investigation of an officer. *See* La. R.S. 40:2531(B)[3]; *Kendrick v. Department of Police*, 2016-0037 (La. App. 4 Cir. 6/1/16),

---

[3] § 2531. Applicability; minimum standards during investigation; penalties for failure to comply.

B. Whenever a police employee or law enforcement officer is under investigation, the following minimum standards shall apply:

(1) The police employee or law enforcement officer being investigated shall be informed, at the commencement of interrogation, of the nature of the investigation and the identity and authority of the person conducting such investigation, and at the commencement of any interrogation, such officer shall be informed as to the identity of all persons present during such interrogation. The police employee or law enforcement officer shall be allowed to make notes. . . .

(4)(a) The police employee or law enforcement officer being questioned, whether as a target or as a witness in an administrative investigation, shall have the right to be represented by counsel, other representative, or both, of the police employee or law enforcement officer's choice.

(b)(i) Except as otherwise provided in this Subparagraph, the police employee or law enforcement officer shall be granted up to thirty days to secure such representation, during which time all questioning shall be suspended. . . .

(c) The police employee or law enforcement officer's representative or counsel shall be allowed to offer advice to the employee or officer and make statements on the record regarding any question asked of the employee or officer at any interrogation, interview, or hearing in the course of the investigation. . . .

(7) When a formal, written complaint is made against any police employee or law enforcement officer, the superintendent of state police or the chief of police or his authorized representative shall initiate an investigation within fourteen days of the date the complaint is made. Except as otherwise provided in this Paragraph, each investigation of a police employee or law enforcement officer which is conducted under the provisions of this Chapter shall be completed within sixty days. However, in each municipality which is subject to a Municipal Fire and Police Civil Service law, the municipal police department may petition the Municipal Fire and Police Civil Service Board for an extension of the time within which to complete the investigation. The board shall set the matter for hearing and shall provide notice of the hearing to the police employee or law enforcement officer who is under investigation. The police employee or law enforcement officer who is under investigation shall have the right to attend the hearing and to present evidence and

193 So.3d 1277, 1284, *writ den.,* 2016-1435 (La. 11/15/16), 209 So.3d 779 (citing *Young v. Dep't of Police,* 13–1596 (La. App. 4 Cir. 6/25/14), 152 So.3d 193, 194–95, *writ den.,* 15–0201 (La. 4/17/15), 168 So.3d 400); *see also City of Shreveport v. Shreveport Municipal Fire*, 52,838 (La. App. 2 Cir. 8/14/19), 276 So. 3d 1154, 1157.

Santoyo contends he was not given notice of the nature of the complaint against him before the hearing, but was only told, vaguely, that his "professional competence" was the subject of an emergency meeting to be held in two days. Nor, apparently, was Santoyo informed of his right to representation at the meeting, and his attendant right to have 30 days to secure his representation.

Section 2531(C) provides Santoyo with a cause of action to have his dismissal proceedings reviewed and, if there were not in complete compliance with the minimum standards of due process set forth in § 2531(B), to have his dismissal

---

arguments against the extension. If the board finds that the municipal police department has shown good cause for the granting of an extension of time within which to complete the investigation, the board shall grant an extension of up to sixty days. Nothing contained in this Paragraph shall be construed to prohibit the police employee or law enforcement officer under investigation and the appointing authority from entering into a written agreement extending the investigation for up to an additional sixty days. The investigation shall be considered complete upon notice to the police employee or law enforcement officer under investigation of a pre-disciplinary hearing or a determination of an unfounded or unsustained complaint. Nothing in this Paragraph shall limit any investigation of alleged criminal activity. . . .

C. There shall be no discipline, demotion, dismissal, or adverse action of any sort taken against a police employee or law enforcement officer unless the investigation is conducted in accordance with the minimum standards provided for in this Section. Any discipline, demotion, dismissal, or adverse action of any sort whatsoever taken against a police employee or law enforcement officer without complete compliance with the foregoing minimum standards is an absolute nullity.

declared an absolute nullity.  *See Young*, 152 So.3d at 195–96 (citing *Mulvey v. Department of Police,* 12–1041 (La. 1/30/13), 108 So.3d 891, 896, writ den., 2013-C-0484 (La. 4/5/13), 110 So. 3d 591).  Subsection C imposes a penalty for the violation of the minimum standard, *see Young*, 152 So. 3d at 195–96 (citing *Landry v. Baton Rouge Dept.,* 08–2289 (La. App. 1st Cir. 5/8/09), 17 So.3d 991, 998), and establishes dismissal of the disciplinary action as the remedy for the appointing authority's non-compliance with the minimum standard.  *See id.; Mulvey,* 108 So. 3d at 897.  Thus, if Santoyo's right to due process was violated, his dismissal can be declared a nullity and he could be entitled to reinstatement to his prior position, as well as restoration of back pay and emoluments.  *See Young*, 152 So. 3d at 195–96 (citing La. R.S. 49:113).

Because § 2531(C) provides a private cause of action for Santoyo, Defendants' Motion to Dismiss Santoyo's due process claims should be denied.

### 4.    Defendants' Motion to Dismiss Santoyo's defamation claim should be granted.

Defendants argue that Santoyo's defamation claim should be dismissed because his Complaint has not identified any alleged defamatory statement.

In both is amended Complaint and his brief, Santoyo asks the Court to dismiss his defamation claim without prejudice to his right to re-urge it. Accordingly, Defendants' Motion to Dismiss Santoyo's defamation claim should be granted.

### 5. Defendants' Motion to Dismiss Santoyo's federal whistleblower and anti-retaliation claims should be granted.

Defendants argue that Santoyo's federal whistleblower and anti-retaliation claims should be dismissed because his Complaint has not made any factual allegations or identified any statutes to support these claims.

In his brief, Santoyo asks the Court to dismiss his federal whistleblower and anti-retaliation claims without prejudice to his right to re-urge them. Accordingly, Defendants' Motion to Dismiss Santoyo's federal whistleblower and anti-retaliation claims should be granted.

## III. Conclusion

Based on the foregoing, IT IS RECOMMENDED that Defendants' Motion to Dismiss be GRANTED as to Santoyo's: (1) defamation claim; and (2) federal whistleblower and anti-retaliation statute claims; and those claims are DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER RECOMMENDED that Defendants' Motion to Dismiss be DENIED as to Santoyo's: (1) Louisiana Whistleblower Statute (La. R.S. 23:967) claim; (2) due process claims pursuant to La. R.S. 40:2531; and (3) First Amendment claims pursuant to 28 U.S.C. § 1983.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No

other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

SIGNED on Tuesday, November 24, 2020.

Joseph H.L. Perez-Montes
United States Magistrate Judge